456 S.E.2d 469

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Marvin D. SUGG, Defendant Below, Appellant.

No. 22486.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided March 10, 1995.

---

**19.** We, therefore, decline to address the defendant's second assignment of error that the confession was unreliable.

Mary Beth Kershner, Asst. Pros. Atty., Charleston, for appellee.

Jack W. DeBolt, Charleston, for appellant.

CLECKLEY, Justice:

The appellant and defendant below, Marvin D. Sugg, was convicted of aggravated robbery and was sentenced to forty-five years in prison. He appeals his conviction on three grounds: (1) his incriminating statement to police on the night of the arrest should have been excluded at trial because the defendant did not make a knowing and intelligent waiver of his *Miranda* rights [1] and the police failed to immediately present him to a magistrate and notify his parents; (2) evidence regarding coin wrappers was improperly admitted at trial; and (3) the sentence was disproportionate to the crime committed and was imposed for retaliatory reasons. For the following reasons, we reject these challenges and affirm the judgment of the circuit court.

I.

*FACTS*

On December 5, 1992, a Chevron Station in South Charleston was robbed by a young African–American male. After being notified of the robbery, Sergeant Steve Young of the

---

**1.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

South Charleston Police Department observed a young African–American male pedestrian (later identified as the defendant) approximately one-fourth mile from the Chevron Station. Sergeant Young, who was dressed in civilian clothes, emerged from his unmarked car with his gun drawn and ordered the defendant to halt. The defendant fled and was later apprehended by Sergeant Young with the assistance of other South Charleston police officers.

The police read the defendant the *Miranda* warnings while held face down on the ground with his hands cuffed behind his back. When the defendant was lifted from the ground, the officers discovered a .22 caliber chrome plated revolver.[2] The defendant was then transported to the South Charleston Police Station. After arriving at the station at approximately 10:00 p.m., the police discovered the defendant was only seventeen years old. The State claims that shortly after arriving at the station, the defendant told Lieutenant James Miller he wanted to talk. Counsel for the defendant contends the defendant initially denied any involvement with the Chevron robbery and only changed his statements after further interrogation by the police. This interrogation allegedly took place after the police were told the defendant was a minor.

An information sheet, apparently completed with the cooperation of the defendant, asked whether the defendant was informed of his *Miranda* rights and whether he waived them. The defendant signed a waiver of rights form outlining his *Miranda* rights at 10:36 p.m. and placed his initials after every statement explaining his rights. The police took the defendant's formal statement between 10:50 p.m. and 12:45 a.m. It was not until after the police obtained the defendant's statement that the police called the defendant's parents and presented the defendant to the magistrate. Over defense objections, the defendant's confession was admitted at trial.

Because of the gravity of the alleged crime, the defendant's case was transferred from juvenile court to circuit court so that the defendant could be tried as an adult. Following the presentation of the evidence, the jury found the defendant guilty of aggravated robbery with the use of a firearm. By order dated February 4, 1994, the defendant was sentenced to a determinate sentence of forty-five years.

In this appeal, this Court has decided to review the following assignments of error: (1) was the defendant's statement properly admitted at trial; (2) was the evidence of coin wrappers found on the defendant at the time of his arrest properly admitted and argued at trial; and (3) was the sentence imposed upon the defendant disproportionate to the offense and exacted by the judge for retaliatory reasons.

## II.

### DEFENDANT'S STATEMENT

The defendant contends the admission of his incriminating statement to the police after arriving at the police station on the night of his arrest constitutes reversible error. According to the defendant, his statement should be excluded because: (1) the police interrogated him without the presence of a parent or guardian and did not promptly present him to a magistrate; (2) the police failed to immediately notify his parents of his arrest; and (3) he did not knowingly and voluntarily waive his *Miranda* rights. We will address each of the defendant's contentions.

### A.

### *Waiver of Rights Under W.Va.Code, 49–5–8(d)*

The defendant argues the police violated the statutory prompt presentment requirement and interrogated him without the presence of his parents or counsel. W.Va. Code, 49–5–8(d) (1982),[3] details a juvenile

---

**2.** It was later discovered that the gun contained one spent and five unspent bullets. Significantly, a prosecution witness testified that the perpetrator fired one shot after robbing the Chevron Station.

**3.** W.Va.Code, 49–5–8(d), requires that:

"[a] child in custody must *immediately* be taken before a referee or judge of the circuit court and in no event shall a delay exceed the next

standard for prompt presentment that is similar to the adult prompt presentment requirement.[4] Although the two standards are similar, it is important to underscore the fact that the juvenile prompt presentment requirement is more rigorous than the general criminal standard for prompt presentment of an adult under W.Va.Code, 62–1–5 (1965); W.Va.R.Crim.P. 5(a). *See State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985) (noting the strict requirement for juvenile presentment); *State v. Moss,* 180 W.Va. 363, 376 S.E.2d 569 (1988) (same). In *Ellsworth J.R.,* we recognized that the primary purpose for the additional juvenile protection is "the likelihood that a juvenile who commits a serious crime may be transferred to the adult jurisdiction of the circuit court[,] . . . there is a need to ensure that [a juvenile defendant's] constitutional rights are preserved[.]" 175 W.Va. at 69, 331 S.E.2d at 508. If "it appears that the primary purpose of the delay was to obtain a confession from the juvenile[,]" the confession is inadmissible. Syl. pt. 9, in part, *State v. Moss, supra. See also State v. Ellsworth J.R., supra.*

The only evidence presented at the suppression hearing regarding the arrest and the immediate circumstances after the defendant was taken into custody came from the police and the defendant's parents. The defendant did not testify at the suppression hearing or at the trial. The parents of the defendant merely confirmed the date and time the police contacted them and their subsequent efforts to determine the whereabouts of the defendant. Uncontradicted evidence reveals the defendant indicated he wanted to talk to the police and wanted neither a lawyer nor his parents present at the time he discussed the case with the police. Based on this evidence, the trial judge ultimately found the defendant's statement admissible.

The defendant argued at the suppression hearing, as he does before this Court, that the statement should be excluded because of the prompt presentment delay, the parental notification delay, and police interrogation without the presence of a parent or counsel. These contentions collapse in the wake of precedent and the facts of this case.

The record indicates the defendant arrived at the police station shortly before 10:00 p.m. on the night of the robbery and indicated he wanted to talk to the police. When advised of his opportunity to call his parents, the defendant refused indicating he did not want a lawyer or his parents present. A *Miranda* waiver of rights form was signed at 10:36 p.m. An officer started recording the defendant's statement at 10:50 p.m., and the defendant signed off on a transcribed copy of his statement at 12:45 a.m. The defendant was not presented to the magistrate until 1:30 or 2:00 a.m.

The State asserts that the defendant's immediate desire to confess upon his arrival at the police station justified the time lag and interrogation by the officers. This Court has recognized that "a confession otherwise proper is not necessarily invalid" even though the confession was obtained prior to the juvenile's presentment to a magistrate. *State v. Ellsworth J.R.,* 175 W.Va. at 70, 331 S.E.2d at 508. Certain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and

---

succeeding judicial day: Provided, That if there be no judge or referee then available in the county, then such child shall be taken *immediately* before any magistrate in the county for the sole purpose of holding a detention hearing. The judge, referee or magistrate shall inform the child of his right to remain silent, that any statement may be used against him and of his right to counsel, and no interrogation shall be made without the presence of a parent or counsel." (Emphasis added).
W.Va.Code, 49–5–8, was modified in 1994, but the modified provisions in question are not relevant to this case.

4. The prompt presentment requirement for an adult criminal defendant arising from Rule 5(a) of the West Virginia Rules of Criminal Procedure is triggered when a defendant is under arrest or in police custody with probable cause for an arrest. *See State v. Kilmer,* 190 W.Va. 617, 439 S.E.2d 881 (1993); *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986). A delay prior to presentment to a magistrate following an arrest is a "critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syl. pt 3, in part, *State v. Kilmer, supra. See also State v. Dyer,* 177 W.Va. 567, 355 S.E.2d 356 (1987).

transcription of a statement,[5] and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement. *See State v. Ellsworth J.R., supra.* *See also State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982).[6] Here, however, the uncontradicted evidence shows that the defendant asked to talk to the police before there was an opportunity to "book" him and to present him to the magistrate. Thus, the initial delay was attributable to the defendant, and the remaining delay was a result of recording and transcribing the defendant's statement.[7]

■■■ The more difficult issue is whether the defendant's waiver of his rights was knowing and voluntary. As noted in *Moss,* the issue of voluntariness must be addressed separately from that of prompt presentment. 180 W.Va. at 375, 376 S.E.2d at 581 ("compliance with the juvenile prompt present requirement is examined separately from the determination of voluntariness"). The defendant contends any statement given by a minor as the result of interrogation by the police without the presence of a parent or counsel is *per se* invalid. On the other hand, the State contends there is "no requirement that [defendant's] parents be present prior to his giving his statement." We agree with the prosecution. We believe the argument made by the defendant has been essentially foreclosed by *Ellsworth J.R.* where we found a

minor may waive his *Miranda* rights without the presence of parents or counsel.[8] We know of no law which provides that a minor over the age of sixteen is conclusively presumed to be incapable of waiving his constitutional and statutory rights without the consent of his parents. Thus, we must determine whether the statement in this case was freely and voluntarily given under the totality of the circumstances analysis.

■■■ When reduced to its essence, the defendant on appeal contends that a juvenile whose personal liberty is at stake is entitled to the presence and counsel of his parents prior to being interrogated, much as an adult is entitled to the presence of legal counsel in the same circumstances. As such, he suggests, his waiver of *Miranda* rights was invalid and the admission of his statement into evidence was a violation of his statutory right to have his parents present during interrogation. We first note that under both federal and West Virginia law, an adult may waive his right to counsel. We find that under the circumstances of this case, the defendant waived his *Miranda* rights and his right to have his parents present during interrogation.

■■■ Emanating from *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), a number of basic changes in this State's juvenile practice have flowed from the abandonment of the previous *parens patriae* con-

---

5. We indicate in note 3, *supra,* that the Legislature amended W.Va.Code, 49–5–8(d) in 1994 without making any significant changes to it. *Ellsworth J.R.* was decided in 1985. We may "'assume that our elected representatives ... know the law.'" *State ex rel. Smith v. Maynard,* 193 W.Va. 1, 454 S.E.2d 46 (1994), *quoting Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560, 575–76 (1979). Thus, it is logical to assume that the Legislature was fully aware of the *Ellsworth J.R.* opinion and agreed with its interpretation.

6. When analyzing the juvenile prompt presentment standards, we are not as lenient with procedural shortcomings as we are with the adult standards. *See State v. Ellsworth J.R.,* 175 W.Va. at 69, 331 S.E.2d at 508 (consideration of constitutional rights "apply to juvenile defendants even more forcibly [than to adult defendants] because of their age and immaturity"). Therefore, even brief, unexplained delays are magnified when a juvenile's rights are at issue.

7. In determining the reasonableness of the delay, the significant period of detention is that which occurs before the confession and not thereafter. *See Weekley v. State,* 222 A.2d 781, 787 (Del. 1966). In this case, the period before the waiver and confession was approximately twenty minutes and, while not adequately explained by the State or discussed by the trial judge, it appears this relatively brief delay was caused by the defendant's eagerness to talk to the police. Certainly, the prompt presentment rule does not require the police to forego listening to a juvenile who, after being warned of his *Miranda* rights, asks to talk to the police.

8. Although the defendant was a juvenile when arrested, our cases clearly establish that juveniles can waive their *Miranda* rights. We recognized in *State v. Ellsworth J.R., supra,* that even the absence of counsel will not invalidate a juvenile's waiver of *Miranda* rights if it is established that there was a voluntary, knowing, and intelligent waiver.

cept. One such change is that a juvenile must be provided at least the same rights given to adults during interrogation. Thus, when a constitutional right is at stake, its waiver must be knowing, intelligent, and voluntary. Although some of the rights allegedly waived in this instance are statutory and not constitutional, we assume, without deciding, that their waiver must satisfy the same test. We shall examine the criteria used in the constitutional arena to determine if the juvenile's waiver was intelligent and knowing absent the presence and consent of his parents.

*Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), is instructive. It held that a juvenile who was sixteen and one-half years old and suspected of a serious crime might waive his rights without any consultation with or the presence of an adult even though he requested the presence of his probation officer. In *Fare*, the Supreme Court held the totality of the circumstances approach used in determining the validity of an adult waiver applied even when the interrogation of a juvenile is involved:

> "We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212.

The majority of jurisdictions, including West Virginia, rely on the totality of the circumstances test in deciding whether statements by a juvenile were given voluntarily, knowingly, and intelligently. *See State v. Laws*, 162 W.Va. 359, 362, 251 S.E.2d 769, 772 (1978) [9]; *In re Kean*, 520 A.2d 1271, 1274–75 (R.I.1987) (case citations omitted). What was implicit in *Laws* we now make explicit. We adopt the rationale expressed by the majority of jurisdictions and hold that the validity of a juvenile's waiver of his or her rights should be evaluated in light of the totality of the circumstances surrounding the waiver, and the presence or absence of the parents is but one factor to be considered in reaching this determination.[10] In adopting the totality of the circumstances standard, we do so in the belief that circuit courts are equipped with the expertise and experience to make competent evaluations of the special circumstances involved in a juvenile's waiver of rights and should be allowed the discretion to do so. Requiring the presence of parents in every case in which a juvenile is in custody and informed of his rights "would be overly protective; would exclude from evidence juvenile statements that are, in fact, knowingly and voluntarily given; and would restrict law

---

9. In *State v. Laws*, 162 W.Va. at 363, 251 S.E.2d at 772, we recognized numerous factors that must be examined when evaluating the voluntariness of a juvenile confession under the totality of the circumstances. Some of these factors include:

> "1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extra judicial statement at a later date. *West v. United States*, 399 F.2d 467 at 469 (5th Cir.1968). See also, *State*

*In Interest of Dino, La.*, ... 359 So.2d 586 at 591 (1978)."

10. We wish to make it clear, however, that our ruling is not intended in any way to diminish the *bright-line* and *per se* effect of the prompt presentment or *Miranda* rulings. In *Moss* and *Ellsworth J.R.*, this Court made it clear that in juvenile cases noncompliance with the prompt presentment requirement results in inadmissibility if the violation occurred for the primary purpose of obtaining a confession. To be specific, any evidence obtained during a period of "unnecessary" delay between arrest and presentment of the juvenile to the magistrate is inadmissible at trial if such evidence was reasonably related to the unnecessary delay. Similarly, a confession obtained during a custodial interrogation is only admissible if the *Miranda* rights have been scrupulously honored.

enforcement unnecessarily." *In re Kean,* 520 A.2d at 1275. This Court should not and will not ignore the fact that juvenile crime is as serious a menace to society as those crimes committed by adults. To the victims of crime, the age of the perpetrator is inconsequential.

 Under today's decision, a juvenile can make a voluntary, knowing, and intelligent waiver after he is properly apprised of his constitutional and statutory rights. *See State v. Kilmer,* 190 W.Va. 617, 439 S.E.2d 881 (1993); *State v. Randolph,* 179 W.Va. 546, 370 S.E.2d 741 (1988) (defendant did not knowingly and intelligently waive *Miranda* rights because he was not informed of the nature of the charges against him); *State v. McDonough,* 178 W.Va. 1, 357 S.E.2d 34 (1987). However, the prosecution has a heavy burden in establishing that a waiver is knowing and intelligent especially when there is a possibility that the juvenile has some sort of mental incapacity. *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981). We agree also that a juvenile's youth and experience are highly relevant factors for consideration under *Fare's* and *Laws's* totality of the circumstances test and that confessions or admissions of a juvenile require special scrutiny. *See Haley v. Ohio,* 332 U.S. 596, 599–600, 68 S.Ct. 302, 303–04, 92 L.Ed. 224, 228–29 (1948); *Gallegos v. Colorado,* 370 U.S. 49, 54–55, 82 S.Ct. 1209, 1212–13, 8 L.Ed.2d 325, 328–29 (1962). Thus, a juvenile's purported waiver is accorded special consideration. *See also State v. Laws,* 162 W.Va. at 362, 251 S.E.2d at 772 ("juvenile rights should be guarded with a greater zeal than adult rights"). Where neither legal counsel nor the parents are present, the greatest care must be taken by the trial court to assure that the statement of the juvenile is voluntary, in the sense not only that it was not coerced or suggested, but that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair.

 Several factors weigh against a voluntary and knowing waiver of *Miranda* rights in this case. For example, the defendant was a minor at the time of his arrest and had some experience with the juvenile court system. The first time the defendant was orally given his *Miranda* warnings was under rather dramatic circumstances considering the officers gave the defendant his *Miranda* warnings while he was face down on the ground, thus raising the possibility that the defendant was not in the position to truly appreciate his constitutional rights. Furthermore, the defendant had no previous charges as an adult for any crime and only one prior misdemeanor conviction as a juvenile. The defendant reads below a third-grade level,[11] and the testimony of certain prosecution witnesses conflicts with prior testimony under oath as to whether the defendant was actually read the *Miranda* waiver of rights form.[12]

---

11. We have recognized that a mental impairment could establish a defendant's inability to waive his rights. *See State v. Boyd, supra.* Additionally, a defendant's possible mental incapacity is so significant that a defense attorney's failure to raise the issue of mental incapacity, where the facts suggest some impairment, constitutes ineffective assistance of counsel. *Wickline v. House,* 188 W.Va. 344, 424 S.E.2d 579 (1992). Similarly, we believe a juvenile's reading level is obviously relevant in the determination of his ability to waive his rights when he is handed a written form and told to read it. However, no evidence was offered during the suppression hearing that the defendant had a below average reading level. Although defense counsel did not argue incapacity during the suppression hearing, he did question one prosecution witness as to whether the witness could be sure the defendant understood the *Miranda* warnings.

12. Lieutenant Miller of the South Charleston Police Department testified on direct examination at trial that he read the *Miranda* waiver of rights form to the defendant. However, on cross-examination, Lieutenant Miller admitted to the following exchange at the preliminary hearing before a juvenile referee:

" 'Q Did you at any time read the rights to him?

" 'A Did I?

" 'Q Yes, sir.

" 'A Not, no, I asked him if he understood his rights. I never asked him or actually read his rights to him. I showed him the form, and I asked him if he didn't understand that form. And he read the form and initialed it.

" 'Q Did anyone in your presence read his rights to him?

" 'A Not in my presence, no, sir.' "

On redirect, Lieutenant Miller attempted to explain his conflicting testimony by suggesting that at the time of the preliminary hearing he "was under the impression when that question was asked to me at the crime scene."

On the other hand, there are also a number of factors that suggest the defendant did give a knowing and intelligent waiver of his *Miranda* rights. These include the following: (1) the defendant did have some prior experience with the police; (2) the *Miranda* rights were indisputably read to the defendant at least one time; and (3) there was a signed waiver of rights form with the defendant's initials by each right. More significantly, the defendant was encouraged to call his parents once he indicated his desire to talk to the police, but he decided he did not want either an attorney or his parents to be present.

■ The defendant argues another factor that should be considered is the language of the waiver of rights form. The form contains the following contested language: "We have no way of giving you a lawyer, but one will be appointed for you if you wish, if and when you go to court." Although admittedly the waiver form in question is somewhat confusing, the United States Supreme Court has upheld confessions premised on waiver forms with almost identical language. *See Duckworth v. Eagan,* 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (the language of the warning in its entirety sufficiently informed the defendant of his constitutional rights). We have not dealt specifically with the exact language of the present waiver form. We hold that a form with ambiguous language of this nature may not alone compel exclusion of a statement, but in combination with the special circumstances of a case may constitute a compelling factor bearing against a knowing and intelligent waiver.

■ All these facts were before the trial court at the time it ruled on the motion to suppress. Nevertheless, the trial court concluded after a full evidentiary hearing that "given the totality of the evidence, I find that the South Charleston Police Department did, in fact, bring him before a legal authority at the earliest possible time." In reference to the *Miranda* waiver, the trial judge found

"the *Miranda* rights were given, the waiver of rights form was signed intelligibly." On review, this Court will not overturn the factual findings of a trial court on a motion to suppress unless they are clearly erroneous. As stated in Syllabus Point 1, in part, of *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994), a trial court's factual findings regarding the voluntariness of a confession will not be set aside unless they are "plainly wrong or clearly against the weight of the evidence." We find the evidence in the record amply supports the trial judge's findings in this case and the findings are sufficient to justify the trial court's decision.

### B.

#### *Parental Notification*

The time lag before the defendant's mother and stepfather were notified of his arrest is more problematic in this case. The record reveals the trial court determined the police attempted to call the defendant's parents as soon as possible. The defendant contends this finding is in contravention of the clear language of W.Va.Code, 49–5–8(b)(4)(i) (1982).[13]

■ Based upon the holdings of *Ellsworth J.R.,* we find the absence of a parent or counsel when a juvenile waives his rights is not necessarily a bar to a voluntary *Miranda* waiver and ultimately a confession. However, W.Va.Code, 49–5–8(b)(4)(i), requires immediate notification of the parents of a juvenile after the juvenile's arrest. The presence or absence of a valid *Miranda* waiver does not relate to whether the police have satisfied the statutory requirements of W.Va. Code, 49–5–8(b)(4)(i). While there are no cases in West Virginia specifically dealing with W.Va. Code, 49–5–8(b)(4)(i), we can presume that the Legislature, in enacting said provision, did so with the realization of the importance of informing parents when their child is in police custody, so they can respond to their child's needs.

**13.** W.Va.Code, 49–5–8(b)(4)(i), provides, in part: "Upon taking a child into custody, with or without a warrant or court order, the official shall: (i) Immediately notify the child's parent, custodian or, if the parent or custodian cannot be located, a close relative[.]" Although W.Va.Code, 49–5–8(b)(4), was amended in 1994, the changes did not substantially alter the content of this provision.

Although, the text and parental notification requirements pursuant to W.Va.Code, 49–5–8(b)(4)(i), resemble the prompt presentment standards and, arguably, should be examined under a similar analytical framework, all the justifications for delays in presenting a juvenile which have been allowed under prompt presentment should not be extended to the parental notification requirement. Notifying parents is not a difficult task; it should only take a few minutes to telephone the parents and explain a juvenile's status. While we recognize there are times when parents will be difficult to locate, in those instances, the difficulty in locating the juvenile's parents and the officer's attempts to notify the parents, guardians, etc., shall be taken into consideration by the trial court whenever a question of compliance arises. Furthermore, as with prompt presentment, parental notification for juveniles forms a second barrier between a juvenile's constitutional rights and governmental overreaching. Granted, some parents may not have the ability to assist their children in any legal capacity, but such speculation is not justification to thwart the unequivocal statutory mandate of W.Va. Code, 49–5–8(b)(4)(i).

■■■ Barring ameliorating circumstances, this requirement at the very least mandates adequate notice of the juvenile's status to the parents. This construction is in harmony with the legislative purpose of W.Va.Code, 49–5–8(b)(4)(i). It is implicit that a child involved in the commission of an offense should be afforded protective counseling concerning his legal rights from one interested in his welfare. Other jurisdictions with similar statutes have reached the same conclusion. See *In the Matter of Aaron D.,* 30 A.D.2d 183, 290 N.Y.S.2d 935 (1968) (the failure to notify parents as statutorily required renders confession of juvenile inadmissible).

In this case, the State presented no evidence that attempts to contact the juvenile's parents were unsuccessful or that the parents were initially difficult to locate. Therefore, we must decide from the record presented to us whether there was another reasonable justification explaining why the police waited until after the juvenile's state-ment was not only recorded, but transcribed and signed by the juvenile before informing the juvenile's parents of his arrest.

At the conclusion of the suppression hearing on the confession, the trial judge stated:

"THE COURT: Well, the Court finds in fact and concludes in law, frankly, until the testimony of Mr. Brock [ (the defendant's step-father) ] I was inclined to suppress it because Lieutenant Miller testified he knew that your client was a juvenile, that is he was seventeen, I believe. But Mr. Brock, the stepfather, testified, and I think this rehabilitates the South Charleston Police Department. They attempted to contact your client's parent. In fact, they talked to Mr. Brock on the telephone, the stepfather. Mrs. Brock, the natural mother of your client, was not at home. But South Charleston did attempt to contact the parents. And I think that rehabilitates any shortcomings, if there be any, in his being questioned as a juvenile.

"Number one, he said he didn't want a lawyer; he didn't even want his parents contacted, but they did contact them, or they attempted to, so I think that rehabilitates the requirements as far as his being a juvenile at the time of questioning."

The issue we must now resolve is what relief a juvenile is entitled where the aforesaid statute is not followed, but the juvenile, who is given the opportunity to call his parents, declines to do so and further tells the police that he does not want either his parents or an attorney present when he talks to the police.

■■■ We are not cited nor has our research disclosed binding West Virginia precedent for the proposition that the failure to notify parents inevitably leads to the exclusion of a confession. To the contrary, we find the statute is absolutely silent as to what sanctions are to be imposed when this provision is violated. The absence of legislative guidance makes this section difficult to enforce, particularly when we find the man-

dates of the statute were not technically followed.[14]

In this case, the juvenile arrived at the police station at 10:00 p.m. Although his parents were not notified of his arrest until approximately three hours later, the failure to call his parents until after the statement was completed was a result of the juvenile's not wanting his parents called. Although the statute undeniably requires that a juvenile's parents should be immediately notified of a child's arrest, in this case the State has attempted to provide good faith justification for the delay in notifying the defendant's parents of his arrest.

▆▆▆ The State urges us to hold that the defendant, as a juvenile, waived his right to prompt parental notification, but because of our disposition, we do not find it necessary to decide whether a juvenile can waive the right to parental notification. We note, however, that normally, a defendant cannot waive interests that are given to the public or others. *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544 (1980) (right to a public trial); *United States v. Keith*, 42 F.3d 234, 238–40 (4th Cir.1994) (right to a speedy trial). Nor do we find it necessary to decide whether the police were in substantial compliance with the statute. Assuming, without deciding, that our rule requires the exclusion of a juvenile's statement where there has been no parental notification, we believe there should be at least one exception to such a rule. Under these circumstances, the appropriate inquiry in our view should be whether, after a careful review of the record in its entirety, the reasons underlying the delay in notifying the parents, *as agreed to by the juvenile*, set forth a sufficient factual basis which support a find-

ing that the delay was initiated or suggested by the juvenile and the police did nothing during the period of the delay to take advantage of a juvenile's youth and inexperience. Accordingly, we hold that if a juvenile affirmatively requests that his parents not be notified until after he talks to the police and this request is not coerced or suggested by the police, a juvenile cannot take advantage of that discrete period of time that it takes to conduct the interview.[15]

▆▆▆ We further believe a *per se* punitive exclusion is particularly inappropriate in cases such as this where the police conduct complained of (i.e., failure to immediately notify the parents of the juvenile's status prior to interrogation) occurred before we judicially recognized the significance of that right. Thus, we find the circuit court did not abuse its discretion in admitting the juvenile's confession.

## III.

## COIN WRAPPERS AND ROLLS OF COINS

The defendant's second and third assignments of error cover the admission into evidence and closing argument of the State concerning coin wrappers found on the defendant at the time of the arrest. The defendant argues the coin wrappers found in his pockets at the time of his arrest should not have been admitted into evidence because (1) the trial court failed to conduct an *in camera* hearing covering questions of search and seizure, (2) the State failed to establish a chain of custody for the evidence, and (3) the evidence was not adequately connected to the

---

**14.** Unlike W.Va.Code, 49–5–1(d) (1982) (requiring the exclusion of extrajudicial statements of a child under the age of sixteen, but above thirteen if parents or counsel are not present), W.Va. Code, 49–5–8(b)(i), has no language requiring the exclusion of evidence when its parental notification provisions are violated. *Expressio unius* is a well-accepted canon of statutory construction. William N. Eskridge, Jr. & Philip P. Frickey, *Cases and Materials On Legislation: Statutes And The Creation Of the Public Policy* 641 (1988). If the legislature includes a qualification in one statute, but omits the qualification in another related statute, courts should assume the omission was intentional; the courts infer that the

Legislature intended the qualification would not apply to the latter statute. This canon is a product of logic and common sense, and it has special force when the statutory scheme is carefully drafted. Unquestionably, our juvenile statutes are carefully sculpted; they are the product of a legislative drafting process which began in 1936 and even today are the subject of legislative revisions.

**15.** It should be clear that we express no opinion directly or indirectly as to what relief a juvenile is entitled where the parental notification delay is due exclusively to the police.

offense charged. Furthermore, it is contended that the trial court erred by allowing the prosecution to discuss the coin wrappers during closing argument without any foundation.

We find the defendant's first contention that the trial court failed to conduct an *in camera* hearing regarding the admissibility of the coin wrappers into evidence is misleading. An *in camera* suppression hearing was held covering two days of testimony. There was uncontradicted testimony that the coins and the wrappers were discovered during a search of the defendant immediately after he was arrested. Testimony of Lieutenant R.M. Hutchison II reveals the following:

"A: The search continued, again looking for further weapons. And a sum of money was discovered concealed in the clothing of the individual. At that point, knowing that Chief of Detectives Miller was close by, I let him recover the money from the clothing rather than remove it myself and hand it to him.

The State, at the suppression hearing, identified the evidence as State's Exhibits 7 and 8:

"[PROSECUTION]: Judge, as a matter of housekeeping, could I go ahead and mark some *evidence* so I don't have to keep it in my office?

"THE COURT: Yes.

"[PROSECUTION]: We have marked for identification purposes a gun as State's Exhibit No. 3, an envelope with a spent round as State's Exhibit 4, an evidence bag with some .22 caliber bullets inside of it as State's Exhibit No. 5, an evidence bag with with a piece of stocking or hose in it as State's Exhibit No. 6, a blue coin wrapper as State Exhibit's No. 7 and a red and brown coin wrapper as State's Exhibit No. 8. The reason I'm doing that, Judge, I'm going to turn it over to the reporter so I don't have to keep it down in my office all night.

"THE COURT: Any objection?

"[DEFENSE COUNSEL]: I have no objection to them being marked Your Honor." (Emphasis added).

The trial court gave the parties ample opportunity during a hearing on a motion to suppress to raise any relevant issues and to offer evidence in support of their contentions. In fact, defense counsel did ask Lieutenant Hutchison specifically about some of the items found on the defendant at the time of his arrest:

"[DEFENSE COUNSEL]: Lieutenant Hutchison, you indicated that money was found concealed in his clothing?

"A. Uh-huh.

"Q. Are you saying it was in his pocket?

"A. As I recall it was in his pocket in one of the jackets he was wearing."

Lieutenant Miller testified at trial the defendant had a gun, a substantial quantity of money, and lady's stockings on his person when arrested. During Lieutenant Miller's testimony, the State attempted to introduce into evidence a plastic bag containing additional items supposedly seized after the arrest. Defense counsel immediately objected to the State's attempt to introduce a penny coin wrapper and a nickel coin wrapper.

The following exchange took place after the State attempted to discuss the coin wrappers and defense counsel and the State approached the bench:

"[Defense counsel]: Your Honor, I believe counsel for the State was about to refer to two items in his bag, which appear to be coin wrappers, which were not taken up during the suppression hearing. Nobody mentioned coin wrappers whatever during the suppression hearing.

"[Prosecution]: Judge, there was no motion to suppress any of that evidence.

"[Defense Counsel]: I make it right now because I don't know if he is going to offer into evidence—

"[Prosecution]: I certainly am. Judge, these are items taken from the defendant when he was patted down in a lawful search incident to arrest. The police have a right to pat down a suspect to make sure they don't have any weapons.

"THE COURT: They were taken off his body?

"[Prosecution]: They certainly were, Judge, when they patted him down.

"THE COURT: Overruled. Note your exception."

As the above exchange indicates, defense counsel did not attempt to explain the evidentiary basis for the objection.[16] Following the bench conference, Lieutenant Miller identified the coin wrappers as additional items that were removed from the defendant at the time of the arrest. The judge subsequently asked whether there were any other objections to the admissibility of the coin wrappers. Defense counsel added the additional ground of relevancy. The judge overruled the relevancy objection.

Thus, we find the defendant is mistaken when he says that "[n]obody mentioned coin wrappers whatever during the suppression hearing." The coin wrappers were specifically identified as State's Exhibits 7 and 8 at the suppression hearing. No reason exists for identifying coin wrappers as exhibits other than the desire to offer them later at trial. Despite the above, the defendant persists in his contention that he did not know the coin wrappers were to be used as evidence and, for that reason, never made a motion to suppress these specific items.

■■■■ We believe the right to an *in camera* hearing under these circumstances arises only when the defendant has made an objection on the ground of an illegal search and seizure. In *State v. Pratt*, 161 W.Va. 530, 540, 244 S.E.2d 227, 233 (1978), this Court stated: "According to [*State v.*] *Harr*, [156 W.Va. 492, 194 S.E.2d 652 (1973),] then, the right to a hearing out of the jury's presence about the lawfulness of an arrest from which evidence is produced, exists when de-

fendant objects that the evidence was obtained through illegal search—illegal here because it was incident to an alleged invalid arrest." *See also State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982). To the extent the defendant wanted a more extensive hearing on the unlawful seizure of the coin wrappers, he was required to make a pretrial motion to suppress these items "unless the grounds are not known to the defendant" as provided by Rule 12(b)(3) of the West Virginia Rules of Criminal Procedure.[17] Failure to make this motion will under most circumstances constitute waiver under Rule 12(f) of the Rules of Criminal Procedure.[18]

■■ As stated above, the defendant seeks to avoid waiver by arguing he was unaware the coin wrappers were to be used against him at trial. Although we have already rejected this excuse on factual grounds, we believe there are two additional reasons that prevent us from granting the defendant relief under this assignment of error. First, the drafters of the West Virginia Rules of Criminal Procedure provided a clear remedy for defendants who are unsure of what evidence the State may offer. Rule 12(d)(2) of the West Virginia Rules of Criminal Procedure provides in pertinent part as follows:

"(d) Notice by the State of the Intention to Use Evidence.

\* \* \* \* \* \*

(2) At the Request of the Defendant.— At the arraignment or as soon thereafter as is practicable, the defendant may, in order to afford an opportunity to move to suppress evidence under Rule 41, request notice of the state's intention to use (in its

---

16. Defense counsel also failed to preserve any errors under Rule 403 (prejudicial balancing test) and Rule 901 (authenticity) of the West Virginia Rules of Evidence.

17. Rule 12(b) of the West Virginia Rules of Criminal Procedure reads, in part:

"*Pretrial Motions.* Any defense, objection or request which is capable. of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

\* \* \* \* \* \*

"(3) Motion to suppress evidence unless the grounds are not known to the defendant[.]"

18. Rule 12(f) of the Rules of Criminal Procedure reads as follows:

"*Effect of Failure to Raise Defenses or Objections.* Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, may constitute waiver thereof, but the court for cause shown should grant relief from the waiver."

evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16."

Rule 16(a)(1)(C) provides:

"Documents and Tangible Objects.— Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of his defense or are intended for use by the state as evidence in chief at the trial, or where obtained from or belonging to the defendant."

If there was any doubt as to what the State intended to use as evidence ·after the suppression hearing, the defendant, by a simple exercise of reasonable diligence, could have utilized either or both of the above rules to discover the intentions of the State. Because the defendant did not avail himself of these discovery devices, we cannot excuse his failure to file a pretrial motion to suppress the coin wrappers.

Furthermore, even as of this date, we do not know what purpose another *in camera* hearing would serve. The defendant has failed to cite or offer any basis to justify the exclusion of the coin wrappers on constitutional grounds. The defendant did not at the hearing on his motion to suppress, at trial, or on appeal present any evidence suggesting the items were removed in an unlawful search incident to arrest. West Virginia jurisprudence is replete .with cases upholding the admission of evidence seized as an incident to a lawful arrest. *See State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983); *State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46

(1982); *State v. Boswell,* 170 W.Va. 433, 294 S.E.2d 287 (1982). *See also New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). We find no error in the trial court's failure to hold an additional *in camera* hearing to determine the admissibility of the coin wrappers.

 The final objection made to the admissibility of the coin wrappers was with regard to relevancy. Even here, defense counsel only objected on relevancy grounds and did not provide any explanation or justification for the objection.[19] We are thus left to guess how the defendant envisioned the evidence was irrelevant. Nevertheless, we find the relevancy objection is also without merit. Obviously, coin wrappers found on the person of the defendant minutes after an armed robbery are circumstantially relevant to the case. To satisfy the relevancy requirement under Rule 401 of the West Virginia Rules of Evidence, the offered evidence merely needs to make a fact of consequence more or less probable than it would be without the evidence. *State v. Derr,* 192 W.Va. 165, 178, 451 S.E.2d 731, 744 (1994). Given the relevancy of coin wrappers found on the defendant immediately after the robbery and the fact the State had a good faith basis to believe the coin wrappers found on the defendant were fruits of the robbery, the trial court did not abuse its discretion in ruling the testimony was probative and any probative value outweighed the prejudicial effect of the evidence under Rule 403.

The defendant's second argument concerns the impropriety of the State's comments during closing argument concerning the rolls of coins. During the State's closing argument, the following exchange took place:

---

**19.** In requesting the exclusion of this evidence, the defendant cites no specific exclusionary rule other than "irrelevancy," just as he cited none at trial. Indeed, there is no rule mandating the exclusion of this evidence. The most logical fit for the exclusion of this evidence, considering the objection made, is Rules 401 and 402 of the West Virginia Rules of Evidence.

Rule 402 requires exclusion only if the evidence does not meet the "probability" standard of Rule 401: **"Rule 401. Definition of 'Relevant Evidence'.** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." An objection that evidence is "irrelevant" does not normally preserve error under the more specific exclusionary rules of Rules 404 through 412. Thus, we need only determine whether this evidence is "logically" relevant under Rule 401.

"[Prosecution:] He [the defendant] even had, he even had the rolls of coins that came out of the cash register.

\* \* \* \* \* \*

"[Defense counsel]: There is no testimony of that whatsoever—

"THE COURT: The jury will remember the testimony. If there wasn't, disregard that last observation by the Prosecutor.

"[Prosecution:] ... But I would submit to you that those rolls of coins were removed from the defendant and they were in his pocket that night.... And I would submit to you that the rolls of the coins came out of his pocket[.]"

■■■ The argument of defense counsel misconstrues the role and function of the prosecuting attorney. Clearly, a prosecuting attorney should refrain from referring to questionable evidence that may poison the jury's mind against the defendant. However, there is equally clear authority that a prosecuting attorney's suggestion of a plausible inference to be drawn from the evidence is proper. *See State v. Asbury,* 187 W.Va. 87, 92, 415 S.E.2d 891, 896 (1992) ("[a] prosecutor is allowed to argue all reasonable inferences from the facts"). In the present case, the prosecutor's comments to the jury merely were his interpretation of the facts. We find the inference that the cash in the defendant's possession was the result of a robbery was plausible from the evidence and the argument, therefore, was proper.[20]

■■■ Even were we to find that the argument was not factually supported by the evidence, we would not reverse this case. A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice. *See State v. Petrice,* 183 W.Va. 695, 398 S.E.2d 521 (1990) (prosecutor's comments, although inappropriate, were not sufficient alone to justify reversal of verdict). *See also State v. Stewart,* 187 W.Va.

422, 419 S.E.2d 683 (1992); *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975). It is not enough that prosecutorial remarks are "undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144, 157 (1986), *quoting Darden v. Wainwright,* 699 F.2d 1031, 1036 (11th Cir.1983). The test is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 437 (1974). This Court has held that whether improper argument by the prosecution has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial. *State v. Moss,* 180 W.Va. at 368, 376 S.E.2d at 574 (reversed: prosecutor called the defendant a " 'psychopath' with a 'diseased criminal mind' " and encouraged the jury to find the defendant guilty of first degree murder so the defendant "would 'never be released to slaughter women and children of Kanawha County' ").

■■■ Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. *United States v. Harrison,* 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied sub nom., Wissler v. United States,* 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984).

■■■ In this case, the comments in question were not so egregious and prejudicial "that manifest injustice resulted from the prosecutor's remarks insofar as their cumulative effect denied the [defendant] his fundamental right to a fair trial and constituted

**20.** We review for abuse of discretion the circuit court's failure to caution the jury regarding inferences to be drawn from admitted evidence. *See United States v. Vogt,* 910 F.2d 1184, 1192 (4th Cir.1990) (assessments of relevancy and prejudice of evidence are committed to the broad discretion of the trial judge). Accordingly, we do not find the trial court abused its discretion by leaving to the jury what inferences should be drawn.

plain error." *State v. Moss*, 180 W.Va. at 368, 376 S.E.2d at 574. Furthermore, the evidence supporting guilt was overwhelming.

## IV.

### *SENTENCING*

The defendant's last argument is that the trial court imposed a disproportionate sentence for retaliatory reasons. According to an affidavit submitted by defense counsel, the trial judge engaged in improper plea bargaining by privately telling counsel that if the defendant would plead guilty to the crime, the judge would guarantee the defendant would be sentenced to less than thirty years; but, if the defendant proceeded to trial, the judge would not make any guarantees about the sentence. Defense counsel asserts the trial judge told him the trial judge would deny his statements if defense counsel informed anyone else. After discussing the trial judge's proposal with the defendant, the defendant opted to proceed to trial.

 As a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute. In Syllabus Point 2 of *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994), this Court stated:

> " 'Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)."

In this case, the defendant was convicted and sentenced within the statutory period.[21] W.Va.Code, 61–2–12 (1961), only requires that a defendant convicted of aggravated robbery receive a minimum sentence of ten years.[22]

However, the defendant's assertion that the trial judge engaged in impermissible plea bargaining and the defendant's lengthy sentence would, if adequately documented, raise the issue that the defendant's determinate sentence of forty-five years may have been based on some impermissible factor.

 Rule 11 of the West Virginia Rules of Criminal Procedure erects an absolute bar to a trial judge's participation in plea bargaining. A trial court is free, of course, to reject a plea agreement and may even express its reasons for doing so. But Rule 11(e)(1) prohibits absolutely a trial court from all forms of judicial participation in or interference with the plea negotiation process. There are, of course, good reasons for the rule admitting of no exceptions. First and foremost, it serves to diminish the possibility of judicial coercion of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea. Second, such involvement is likely to impair the trial court's impartiality. A judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement and, therefore, may resent a defendant who rejects his advice. Third, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. As a result of his participation, the judge is no longer a judicial officer or a

---

**21.** The forty-five year sentence would clearly be a reasonable sentence for aggravated robbery in certain cases. In fact, we have upheld sentences for aggravated robbery in excess of forty-five years. *See, e.g., State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987) (seventy-five year sentence upheld when victim nearly died and defendant had previous convictions and a presentence report characterized the defendant as violent), *rev'd on other grounds, State v. Glover*, 183 W.Va. 431, 396 S.E.2d 198 (1990); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (life sentence upheld where crime was violent and defendant had a prior record); *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989) (sixty year sentence not disproportionate where victim suffered permanent emotional damage and the defendant had several prior convictions). *But cf.*

*State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983) (forty-five year sentence violated proportionality principles because it was disproportionate to the crime where no weapon was used, the victim was not seriously injured, and only prior conviction was for public intoxication).

**22.** W.Va.Code, 61–2–12, provides, in part:

> "If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years."

neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he suggests to the defendant. For these reasons, Rule 11(e)(1) draws a bright-line prohibiting judicial participation in plea negotiations. In sum, Rule 11 requires that a judge explore a plea agreement once disclosed in open court; however, it does not license discussion of a hypothetical agreement that he may prefer.

■ It is conceivable that the trial judge may have engaged in improper conduct, as claimed in defense counsel's affidavit. However, the affidavit submitted to this Court is not part of the trial record and the remaining record is insufficient to prove a retaliatory sentence. Thus, defense counsel's failure to properly vouch the record during the trial or following the sentencing hearing and the lack of other evidence supporting the allegations preclude our appellate consideration of the possibility of judicial misconduct in relation to the sentence. Where the record is insufficient for our review, we said in *State v. Derr*, 192 W.Va. at 182, 451 S.E.2d at 748:

> "It is not our practice to address claims such as this one on direct appeal. Accordingly, we require the defendant first assert such a claim in a collateral proceeding under W.Va.Code, 53–4A–1, *et seq.*, so that the trial court can develop a more complete evidentiary record with regard to this constitutional violation claim and what, if any, effect it had on the trial's outcome."

Therefore, we conclude the defendant may pursue this issue in a habeas corpus proceeding.[23]

## V.

### CONCLUSION

For the reasons set forth above, we affirm the judgment and sentence of the Circuit Court of Kanawha County.

Affirmed.

**23.** A timely motion filed under Rule 35(b) of the West Virginia Rules of Criminal Procedure will provide the defendant with a final opportunity to have the circuit court reconsider the appropriateness of the forty-five year sentence.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.