624 S.E.2d 537

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michelle L. McCRACKEN, Defendant Below, Appellant.**

**No. 32665.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2005.

Decided Nov. 30, 2005.

---

Jack L. Hickok, Public Defender Services, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM:

This is an appeal by Michelle L. McCracken (hereinafter "Appellant") from her conviction in the Circuit Court of Marshall County of three counts of first degree murder with the recommendation of mercy. The Appellant contends that the lower court erred in permitting a demonstration of the combustibility of gasoline by the State's expert; in admitting the Appellant's pre-trial statements made to police officers; in allowing the State to recite a child's prayer in closing argument; and in denying the Appellant's motions for judgment of acquittal at the close of the State's case, the close of all evidence, and post-trial. Upon thorough review of the record, arguments, and applicable precedent, this Court affirms the Appellant's conviction.

I. Factual and Procedural History

During the early morning hours of January 15, 2003, the home of Eugene and Ruth Evans was destroyed by fire. Mr. and Mrs. Evans, as well as their seven-year-old granddaughter, Breanna Evans, were killed in that fire. Greg Evans, the son of Mr. and Mrs. Evans and the father of Breanna, was dating the Appellant at the time of the fire. On February 25, 2003, police interviewed the Appellant when she voluntarily went to the police station. She originally explained that she had learned of the fire on a scanner at the home of a friend. She later admitted that the friend did not own a scanner and that she was present at the Evans residence during the fire. She explained that she had visited the home prior to the time of the fire; had tripped over something on the porch, possibly a gasoline can; had thrown her cigarette on the porch; and had heard a whooshing sound. She thereafter left the Evans home and returned later to find it in flames. Upon her return, she heard Ruth Evans scream. Because she did not want her boyfriend, Greg Evans, to know that she had been at the Evans home at the time of the fire, she fabricated the story about learning of the fire through a friend's scanner.

The Appellant was indicted for one count of arson and three counts of murder. At trial, testimony was introduced indicating that although the rear porch of the home was excavated, the presence of an accelerant was never conclusively determined. Fire expert David Campbell explained that the ghosting patterns and run-down patterns found on the rear porch of the Evans home could be signs of the use of an accelerant. He also presented the jury with a demonstration in which Mr. Campbell attempted to prove that the Appellant's cigarette was not likely to have ignited any gasoline present on the porch. In this demonstration, Mr. Campbell explained that a temperature of 880 degrees Fahrenheit is required to ignite gasoline and that a cigarette burns at no more than 350 degrees. He then poured gasoline into a container partially filled with water and dropped a lighted cigarette into it. The gasoline did not ignite. The defense objected to the demonstration because the courtroom conditions did not replicate the conditions of the actual event. The court instructed the jury that the demonstration was not intended to precisely repeat the conditions in existence at the time of the fire.

During the trial testimony of Greg Evans, the prosecutor asked whether he had taught his daughter, Breanna, any bedtime prayers. Mr. Evans said that he had, but further questioning on the matter of prayer was halted by a defense objection sustained by the court. However, during closing argument, the prosecutor readdressed the prayer issue by arguing that it was time for the jurors to "do your job" and to "think about this: Now I lay me down to sleep. I pray the Lord...." Defense counsel objected, but the lower court overruled the objection. The prosecutor resumed: "Now I lay me down to sleep. I pray the Lord my soul to keep. If I die before I wake, pray the Lord my soul to take. She never woke up. They never woke up. Hopefully, they're in God's hands. They are. Justice is in yours."

The jury convicted the Appellant on three counts of murder and one count of first degree arson. The jury also recommended

mercy. The lower court sentenced the Appellant to three life sentences for murder and two to twenty years for arson, to run consecutively. Two days later, the court found that the arson sentence had been improperly imposed because arson was a lesser included offense and would violate double jeopardy. The court therefore resentenced the Appellant to three consecutive life sentences with mercy on the murder counts.

## II. Standard of Review

Based upon the existence of express standards of review applicable to each of the issues raised by the Appellant, those standards of review will be discussed as each assignment of error is analyzed.

## III. Discussion

### A. Demonstration By State's Witness

■ The Appellant contends that the demonstration of the combustible qualities of gasoline should have been excluded under Rule 702 of the West Virginia Rules of Evidence as not helpful and prejudicial. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

In *Short v. Appalachian OH–9, Inc.*, 203 W.Va. 246, 507 S.E.2d 124 (1998), this Court explained that "the essence of Rule 702 is that of assisting the fact finder's comprehension through expert testimony." 203 W.Va. at 253, 507 S.E.2d at 131; *see also Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 654 n. 17, 461 S.E.2d 149, 160 n. 17 (1995) ("Helpfulness to the jury ... is the touchstone of Rule 702."). Moreover, in *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), this Court recognized that the Rules of Evidence are liberal and that a trial court should "err on the side of admissibility." 195 W.Va. at 525, 466 S.E.2d at 184.

■ In addressing the admissibility of expert testimony under Rule 702, the following explanation was provided in syllabus point two of *Wilt v. Buracker*, 191 W.Va. 39,

443 S.E.2d 196 (1993), *cert. denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994):

In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

*See also* Syl. Pt. 3, *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994). The discretion of the lower court was recognized in syllabus point six of *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991), as follows: "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong."

With regard to the demonstration of the combustibility of gasoline by Mr. Campbell in the present case, application of the standards of review applicable to this issue leads this Court to conclude that the discretion of the trial court was exercised reasonably and that court's decision was not clearly wrong. The record reveals that Mr. Campbell has been a firefighter for over forty years and is a retired lead fire investigator from the North Carolina State Bureau of Investigation. He also serves as a consultant in fire and arson investigations. His testimony and concomitant demonstration were of assistance to the jury in determining whether the Appellant's representations concerning the origins of the fire were truthful. Further, the lower court

provided a limiting instruction in which the jury was informed that the demonstration was intended to show the combustible qualities of gasoline rather than to reconstruct the conditions present on the date of the fire. The defense was provided with ample opportunity to cross-examine the witness regarding any issues raised. We therefore conclude that the lower court did not abuse its discretion in admitting the expert testimony and demonstration conducted by Mr. Campbell.

B. Appellant's Statements to Police

■ The Appellant contends that the lower court erred in admitting statements the Appellant made to the police because she was not given her Miranda warnings until approximately five hours after providing a written statement. With regard to the Appellant's assertion that the lower court erred in admitting evidence, this Court stated as follows in syllabus point ten of *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994): "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." *See also* Syl. Pt. 4, *Riggle v. Allied Chem. Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989).

This Court's review of the record reveals that the Appellant was not in custody or under arrest when she arrived at the police station at 9:30 or 9:45 a.m. on February 25, 2003. She was free to leave. She provided her written statement to the police at approximately 11:30 a.m. and was given her Miranda rights at 4:23 p.m. In *State v. Potter,* 197 W.Va. 734, 478 S.E.2d 742 (1996), this Court examined the responsibilities regarding the provision of Miranda warnings and explained that *"Miranda* rights must be given and honored 'only where there has been such a restriction on a person's freedom as to render him "in custody." '" 197 W.Va. at 744, 478 S.E.2d at 752 (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)).

■ Whether the individual was "in custody" is determined by an objective test and asking whether, viewing the totality of the circumstances, a reasonable person in that individual's position would have considered his freedom of action restricted to the degree associated with a formal arrest. 197 W.Va. at 744, 478 S.E.2d at 752; *see also Thompson v. Keohane,* 516 U.S. 99, 113–14 n. 13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *State v. Honaker,* 193 W.Va. 51, 60–61, 454 S.E.2d 96, 105–06 (1994) (utilizing "objective circumstances" test to determine whether the defendant was in custody). In *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), this Court explained that "[t]he 'inherent compulsion' that is brought about by the *combination* of custody and interrogation is crucial for the attachment of *Miranda* rights." 193 W.Va. at 530, 457 S.E.2d at 467 (citation omitted).

Analyzing the record in this case, we conclude that the lower court correctly found that the Appellant's statement was voluntary. We find that no reasonable person in the Appellant's position at the time of interviewing by the police would have considered his or her freedom to have been curtailed. The Appellant was told that she was free to leave at any time because she was not under arrest. She visited the police station voluntarily. We find that the Appellant's statement was properly admitted as a voluntary statement.

C. Closing Argument Recitation of Prayer.

■ The Appellant contends that the lower court erred in permitting the State to twice recite the "Now I lay me down to sleep" prayer in closing argument. The Appellant also emphasizes that the prosecutor told the jury that the Appellant was "guilty as charged" during the recitation of evidence against the Appellant. In response, the State contends that the prosecutor was not stating a personal opinion, but rather was making reference to the substantial evidence pointing to the Appellant as the perpetrator. The State further maintains that prosecutorial statements, even if in error, will not be sufficient to reverse a conviction unless they clearly prejudice the accused or result in manifest injustice.

■ In syllabus point six of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995) this Court explained the factors used in analyzing an allegedly improper prosecutorial remark, as follows:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syllabus point five of *Sugg* elucidated that not every improper prosecutorial statement will result in the reversal of a defendant's conviction: "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." In *State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000), this Court also addressed the principles utilized in evaluating prosecutorial comments and stated as follows:

In reviewing allegedly improper comments made by a prosecutor during closing argument, we are mindful that "[c]ounsel necessarily have great latitude in the argument of a case," *State v. Clifford*, 58 W.Va. 681, 687, 52 S.E. 864, 866 (1906) (citation omitted), and that "[u]ndue restriction should not be placed on a prosecuting attorney in his argument to the jury." *State v. Davis*, 139 W.Va. 645, 653, 81 S.E.2d 95, 101 (1954), *overruled, in part, on other grounds, State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). Accordingly, "[t]he discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syllabus Point 3, *State*

*v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

208 W.Va. at 468, 541 S.E.2d at 346.

In the present case, the prosecutor's recitation of the "Now I Lay Me Down To Sleep" prayer was improper and was not based upon properly introduced evidence. The prosecutor was inappropriately appealing to the sympathy and emotions of the jury and referencing a prayer which had already resulted in a defense counsel objection and the court's sustaining of that objection.

■ However, as the State correctly identifies, not all improper prosecutorial statements will lead to reversal of a defendant's conviction. This Court concludes that within the particular circumstances of the present case, no clear prejudice or manifest injustice resulted from the prosecutor's remarks. An examination of the factors identified in *Sugg* reveals that the conviction in the case should not be reversed. The remarks were of limited duration and were somewhat isolated within the context of the prosecutor's attempt to summarize the evidence against the Appellant. Most importantly, syllabus point five of *Sugg*, quoted above, instructs that remarks "which do not clearly prejudice the accused or result in manifest injustice" will not trigger reversal of a conviction. 193 W.Va. at 393, 456 S.E.2d at 474. Examining all evidence presented in this case, we find no manifest injustice or clear prejudice. While the prosecutor's statements regarding the child's prayer were improper, they do not justify a reversal of the Appellant's conviction in these circumstances.

### D. Sufficiency of the Evidence

■ Finally, the Appellant contends that the lower court erred in denying her motions for judgment of acquittal. The Appellant maintains that the State did not present enough evidence to justify the conviction. With regard to the standard of review of challenges to the sufficiency of evidence to uphold a conviction, we summarized as follows in syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evi-

dence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."

The State presented extensive evidence against the accused in this case. The Appellant's vehicle was observed by three different witnesses at the fire scene. She attempted to fabricate an alibi by asserting that she had learned of the fire on a scanner. Testimony was also introduced regarding the Appellant's jealousy of her boyfriend's family members, her lack of emotion after the deaths of these family members, and her threats against Breanna's mother to the effect that she would beat her up if she did not have Breanna cremated. In addition, the State emphasized the lack of credibility in the Appellant's statement that she tripped over what might have been a gasoline can, flicked her lighted cigarette onto the porch, and left the residence. Viewing that evidence in a light most favorable to the prosecution and crediting all inferences and credibility assessments the jury might have made in favor of the prosecution, as required by *Guthrie,* we find that the evidence was sufficient to support the jury's verdict of guilty.

### IV. Conclusion

Based upon the foregoing analysis, this Court finds that the Appellant's conviction and lower court's findings should be affirmed. We find no abuse of discretion or clear error in any of the lower court's findings.

Affirmed.