# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

March 7, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0555** (Pocahontas County 12-F-40)

**Julian N. Waddell,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Julian N. Waddell, by counsel Joshua L. Edwards, appeals the Circuit Court of Pocahontas County's May 14, 2013, sentencing order following petitioner's convictions of malicious assault and child abuse by a parent resulting in bodily injury. The circuit court denied petitioner's motion for new trial and sentenced him to concurrent terms of two to ten years and one to five years in the penitentiary, respectively, for his convictions. The State of West Virginia, by counsel Laura Young, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

Following a jury trial in March of 2013, petitioner was convicted of the felony offenses of malicious assault and child abuse by a parent resulting in bodily injury.[1] The victims were

---

[1]Petitioner's indictment alleged four offenses: malicious wounding, domestic battery, child abuse, and child neglect creating risk of injury. The State did not pursue the domestic battery and child neglect charges at trial. West Virginia Code § 61-2-9(a) defines, in part, malicious assault as follows:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years.

1

petitioner's live-in girlfriend, Miranda M., and the couple's six-year-old daughter, C.W. The evidence at trial revealed that on January 5, 2012, petitioner came home from work angry and began drinking. Miranda testified that the more he drank, the angrier he became, and they began to argue. The petitioner then left the residence, and Miranda stayed with the two children, C.W. and H.W., who was three years old at the time.

According to Miranda's testimony, petitioner returned three or four hours later and began to beat her. Miranda testified that petitioner struck her several times, causing a laceration over her eye that required stitches, knots on her forehead, sore ribs, and a sore hip. She was able to run away when another person intervened. The evidence also revealed that petitioner threatened to kill Miranda during the attack. As for the child abuse charge, Miranda testified that C.W. was injured when the child attempted to shield Miranda from her father's attack, and petitioner struck the child.[2]

Law enforcement responded to the scene and observed Miranda bleeding around her forehead and nose. Additionally, law enforcement took pictures of Miranda's and C.W.'s injuries, which were admitted into evidence and shown to the jury. At the close of evidence, the circuit court denied petitioner's motion for acquittal and proceeded to instruct the jury, to which there were no objections relevant to this appeal.

However, the State's closing argument gave rise to an objection by petitioner. During his initial closing argument, the assistant prosecuting attorney began by referencing Jesus Christ, stating,

> He was the one who had an answer for about everything. And remember when the Pharisees were tested [sic] Christ, they were setting him up to try to figure out how to commit him and have him do what they needed done with him. And one of the tests were, you know, they talked about in the Old Testament of all the

---

The record reflects that the parties and the circuit court used the terms "malicious wounding" and "malicious assault" interchangeably.

With respect to child abuse by a parent resulting in bodily injury, West Virginia Code § 61-8D-3(a) states:

> If any parent, guardian or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one [§ 61-8B-1], article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than one hundred nor more than one thousand dollars and committed to the custody of the division of corrections for not less than one nor more than five years, or in the discretion of the court, be confined in the county or regional jail for not more than one year.

[2]Miranda testified that she believed the blow to C.W. was intended for her, Miranda, and not for C.W.

things you couldn't eat. You know you couldn't eat the clove of hoofed animals and stuff like that.

And they had Christ pinned down where he had to make an answer and his answer was it's not what man puts in his mouth that condemns him; it's what comes out. And you can see where this case is going I'm sure. That mouths [sic] is the big issue that the Defense can argue that he didn't maliciously intend what he did with that woman.

In his rebuttal closing argument, the assistant prosecutor began by stating, "Again, what would Jesus say? What comes out of a man's mouth that damns -- " At that point, defense counsel objected and the parties had a discussion at the bench, the content of which is not included in the transcript. Defense counsel objected again when the assistant prosecutor told the jury "You are the conscious [sic] of the community. You represent this County." The court overruled the objection.

In addition, prior to trial, petitioner raised issues with respect to disqualification of the elected prosecuting attorney, discovery, and jury selection. The case was tried by an assistant prosecuting attorney. With respect to disqualification of the prosecuting attorney, petitioner moved for the appointment of a special prosecutor due to the fact that the elected prosecuting attorney, Eugene Simmons, prior to assuming his role as prosecutor, had represented Miranda in the abuse and neglect proceeding stemming from the incident giving rise to petitioner's present charges.[3] Additionally, petitioner asserted that Mr. Simmons had previously represented the children in a civil matter as a guardian ad litem. Based on the representations of the assistant prosecuting attorney assigned to the case that he had no knowledge of the abuse and neglect proceeding and his denial of any conflict of interest, the circuit court declined to disqualify the entire prosecutor's office and appoint a special prosecutor.

With respect to discovery, petitioner moved for exclusion of Miranda's medical records on the basis that he received them only one business day prior to the start of trial. In response, the State contended that it turned over the records the same day it received them, which was one day before trial. The court granted petitioner's requested relief and prohibited the State from using the records at trial. However, despite the ruling in his favor, petitioner relied upon the records during cross-examination, and the court allowed the State to use them in its redirect examination. The records showed that Miranda arrived at the hospital by ambulance, had a laceration over her eyebrow, multiple abrasions, tenderness to her collarbone, shoulder, clavicle, hip, and a hematoma and swelling to her left eye.

Lastly, during jury selection, four jurors raised their hand when petitioner's counsel posed the question, "Raise your hand if you agree with me about this, Okay? If a man is accused

---

[3]The record is sparse on this issue, but it appears that both Miranda and petitioner stipulated to abuse and neglect as a result of the incident on January 5, 2012. During the sentencing hearing, the circuit court acknowledged that petitioner alleged he was angry that day as a result of Miranda having a needle in her arm when he came home from work, which led to the assault.

3

of committing a crime, I expect him to get upon the stand and deny it." The circuit court stopped petitioner's counsel from eliciting more detailed responses from the jurors, ruling that such a question was improper and that the jury had indicated that they will abide by the instructions, including whether a defendant has to testify or not.

Petitioner filed his motion for new trial and an addendum thereto alleging he was prejudiced by the late disclosure of the medical records; that voir dire was improperly limited; that the State failed to meet its burden of proof; and that the State improperly injected religion into the case. The court denied the motion, sentenced petitioner, and this appeal followed.

**Discussion**

Petitioner raises five assignments of error in his appeal. First, he argues that the State violated his State and federal constitutional rights by injecting religion into its closing argument and by telling the jury that they are the conscience of the county. As support, he cites to Syllabus Point 9 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), wherein the Court held:

> Appellate courts give strict scrutiny to cases involving the alleged wrongful injection of race, gender, or religion in criminal cases. Where these issues are wrongfully injected, reversal is usually the result. Where race, gender, or religion is a relevant factor in the case, its admission is not prohibited unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Petitioner contends that the references created a moral imperative for the jury to convict him and prevented the jury from carefully distinguishing between the crimes of malicious assault and unlawful assault.

We disagree with petitioner's characterization of the State's closing argument as invoking the strict scrutiny required by *Guthrie.* While perhaps unnecessary to reference Jesus Christ in its closing argument, based on our review of the transcript, we believe the State was merely making the point that the jury should pay attention to what petitioner said during the attack to determine if malice existed. By no means was the reference to Jesus Christ or to the jury being the conscience of the community intended to cause the jury to forget the law and convict on emotion, as was the reasoning behind *Guthrie*.

The grounds for setting aside a verdict on the basis of improper remarks by the State are set forth in Syllabus Points 5 and 6 of *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995):

> 5. A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice.

> 6. Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to

4

prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Applying the factors above, we see no reason to reverse based on the State's closing argument. We believe that the remarks in the present case referred to Jesus Christ as a historical figure and not an appeal to sympathy or emotion. The remarks were intended to cause the jury to focus on the petitioner's words during the attack to establish that he acted with malice. Given the ample evidence of guilt in this case, and noting that petitioner does not argue sufficiency of the evidence in this appeal, the remarks do not warrant reversal of the convictions. *See State v. McCraken,* 218 W.Va. 190, 624 S.E.2d 537 (2005) (holding that not all references to religion in argument require reversal of a conviction.)

Second, petitioner argues that the circuit court should not have permitted the assistant prosecuting attorney to remain on the case given that the elected prosecuting attorney had previously represented the victim in the abuse and neglect proceeding stemming from the same event that led to petitioner's criminal charges. Petitioner argues that this situation invokes Rule 1.9 of the West Virginia Rules of Professional Conduct, which states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

Petitioner presumes that the prosecutor would have had confidential briefings with Miranda in the abuse and neglect proceeding that he would be prevented from disclosing in the criminal case, even if they presented potential impeachment material of Miranda. Petitioner asserts that the elected prosecutor's recusal disqualifies his whole office, and it was error to allow the assistant to remain on the case.

However, contrary to petitioner's argument, from the limited record before this Court it is not clear that the elected prosecutor would have been disqualified from handling the criminal case, despite his decision to recuse himself. In the present case, the elected prosecutor would not have been representing a client in a subsequent proceeding whose interests were adverse to the State's interests, in fact, they may have been the same interests. Additionally, at the hearing on the request for disqualification, petitioner's counsel surmised incorrectly that the assistant planned to use confidential materials from the abuse and neglect case against the petitioner. The present case is different because the prosecutor had not previously represented the petitioner, but rather the witness accusing him of a crime. Therefore, we do not find error in the circuit court permitting the assistant prosecuting attorney to remain on petitioner's case under the facts

presented here.

In his third assignment of error, petitioner argues that reversal is warranted by the late disclosure of Miranda's medical records. He contends that the record was covered by his omnibus discovery request made at the time of his arraignment in which he requested "all such evidence that is in its possession, known to it or through the exercise of reasonable diligence would become known to it." *See* Rule 16, W.V.R.Crim.P.; *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995).

However, it is well-settled that the due process requirement is not as broad as statutory or other discovery rules; the constitution only requires disclosure of exculpatory or impeachment material favorable to the defendant and material to the case. *United States v. Agurs,* 427 U.S. 97 (1976); *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982). Petitioner fails to convince this Court that the records are exculpatory.[4] Additionally, he received the precise relief from the circuit court that he requested – exclusion of the record. It was petitioner who then used the records in cross-examination, opening the door to their use by the State on redirect. Accordingly, we cannot find error with respect to the circuit court's handling of Miranda's medical records.

Fourth, petitioner argues that reversal is warranted by the circuit court's limitation on his questions during voir dire. We note that voir dire is generally within the sound discretion of the circuit court, and not subject to review, save for an abuse of discretion. *See State v. Linkous,* 194 W.Va. 287, 460 S.E.2d 288 (1995). The record in this case reveals that the circuit court did not limit petitioner's questioning on all fronts. To the contrary, petitioner was permitted to inquire as to the jurors' attitudes toward domestic violence, membership in organizations, donations to charities for abused children, special sensitivities to abused children, and the use and abuse of alcohol. It was when the questions turned to testifying that the circuit court intervened to explain that such topics would be covered by the court's instructions. And, petitioner was given the opportunity to rephrase his question, but chose not to. We do not believe the circuit court abused its discretion by limiting voir dire in the manner it did. *See State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974) (finding no error in the refusal to ask jurors if they believed defendant to be guilty because an indictment was returned against him, but in any event, any error was cured by a proper instruction).

Last, petitioner argues that a new trial is warranted by the cumulative effect of the circuit court's errors below. In Syllabus Point 5 of *State v. Walker,* 188 W.Va. 661, 425 S.E.2d 616 (1992), we held:
> "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of

---

[4]Petitioner asserts that the records are exculpatory because they show Miranda did not receive any serious injury. Whether a laceration over one's eye is "serious" may be debatable. However, more importantly, whether her injuries are deemed "serious" is irrelevant under West Virginia Code § 61-2-9. The evidence showed that he "cut" or "wounded" Miranda with the intent to "maim, disfigure or kill" her.

such errors standing alone would be harmless error." Syl. pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972).

Our review of the record in this matter does not show "numerous errors" that prevented petitioner from receiving a fair trial. The primary issue at trial was whether Miranda was "wounded" and whether petitioner acted with malice. In this respect, the jury heard evidence of Miranda's injuries and that petitioner threatened to kill Miranda throughout the attack. We find that the jury was properly instructed as to the offenses charged. Therefore, we do not believe reversal of petitioner's convictions is warranted.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 7, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

This case presents another example of a West Virginia prosecutor expounding upon the teachings of Jesus and the Old Testament in closing argument. Our law is clear that prosecutors cannot inject religion into closing argument. Evidently, the majority held it was proper argument because Jesus is a historical figure.

If this type of argument by prosecutors is proper then we should adopt a new syllabus holding that the defendant's lawyer can argue in closing that:

1. Jesus would give him/her another chance, or, at least, probation. *See* Matthew 7:12;

2. Jesus loved and forgave sinners. *See* John 5:1-15; and

3. Only those jurors without sin may cast a stone in judgment of the defendant. *See* John 8:7.

I dissent.