# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0780** (Marion County 16-F-89)

**Iran G.,**
**Defendant Below, Petitioner**

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Iran G., by counsel James E. Shay, Jr., appeals the Circuit Court of Marion County's August 4, 2017, order sentencing him following his conviction on counts of first-degree sexual abuse, first-degree sexual assault, and sexual abuse by a parent, guardian, custodian, or person in a position of trust.[1] Respondent State of West Virginia, by counsel Scott E. Johnson, filed a response and supplemental appendix. On appeal, petitioner contends the circuit court erred in permitting him to represent himself at trial, denying his motion for a new trial based upon prosecutorial misconduct, and denying his motion for judgment of acquittal because there was insufficient evidence to support his convictions. Petitioner also alleges that that he was denied effective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, petitioner was indicted for 143 counts relating to his abuse of five juveniles, K.L., C.A., E.L., D.A., and J.G. The charges included forty-eight counts of first-degree sexual assault; twenty-four counts of first-degree sexual abuse; and seventy-one counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. The circuit court appointed trial counsel for petitioner and he thereafter filed pretrial motions and otherwise assisted petitioner in building his defense.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

Petitioner's trial commenced in April of 2017. Immediately prior to the trial, petitioner informed the circuit court that he wished to represent himself at trial. When asked why he wished to proceed pro se, petitioner responded

> [w]ell, part of it is my first attorney gave me bad advice, so I had a little issue with trusting the attorney. Mr. Shough[2] has been very helpful and very good to me. But I feel my fate should be in my hands because I am talking about the rest of my life.

The circuit court expressed that petitioner's decision was "contrary to [his] best interest" and further questioned

> [s]o let me ask you this, would you like a little bit more time? I mean, do you want do discuss it a little bit more with [counsel]? I mean, he is – he has tried – I don't know how many criminal cases he's tried, but he has tried a lot of criminal cases, and he's highly qualified. He knows the system. I just – I'm concerned about it being contrary to your best interest to represent yourself.

After further discussion, the circuit court again asked "[s]o if I give you and [counsel] a little bit more time to talk, you don't believe you're going to change your mind, is that what you're telling me?" Petitioner replied "[y]es. That's what I'm telling you." The circuit court continued to advise petitioner against representing himself. The circuit court reviewed, paragraph by paragraph, the signed waiver of right to counsel, advised petitioner of the dangers of proceeding without counsel, and informed him that he would be held to the same evidentiary standard as an attorney. After advising him of the dangers of self-representation, the circuit court again asked petitioner if he desired more time to speak to his counsel. Petitioner briefly thought the matter over but insisted that he wanted to represent himself. The circuit court granted petitioner's motion to represent himself, finding that petitioner was mentally capable to waive representation, was literate and had been fully informed of his right to counsel, fully understood the implications of waiving his right to counsel, voluntarily and rationally waived his right to counsel, and was fully advised of the pitfalls, dangers, and consequences of acting as his own attorney. The circuit court also ordered that Mr. Shough continue as standby counsel in the event that petitioner needed assistance or no longer wished to proceed pro se.

The trial began later that morning and the State called a number of witnesses including each of the five victims, a forensic interviewer, a pediatrician, and a therapist, all of whom spoke to the sexual abuse perpetrated by petitioner. Specifically, the pediatrician testified that she led the physical examinations of all five children and, while not present for the entirety of each exam, was present for the entirety of the examinations of K.L. and E.L. The pediatrician opined

---

[2]Scott A. Shough was petitioner's counsel leading up to the trial. However, the record indicates that petitioner had different counsel who was ultimately relieved prior to Mr. Shough's appointment.

2

that K.L. and E.L. showed the symptomology of children who had been sexually abused. The therapist testified that she worked with each of the five children and specifically opined that J.G. and D.A. gave statements that were consistent with other children who had been sexually abused. Each of the five victims testified that petitioner had touched their vaginas, among other acts of sexual abuse. During the testimony of seven-year-old D.A., the child stated that she was unable to remember how many times she was abused, what day it was, or the time. However, the child was given a drawing of a female body and circled the vagina when asked where petitioner had touched her.

Petitioner testified on his own behalf and denied sexually abusing any of the victims. At that time, the State requested permission to approach the bench and asserted that petitioner had perjured himself due to stipulating to abusing the children in a related abuse and neglect case. Standby counsel for petitioner advised the court that the State had made no mention of discussing the abuse and neglect case during any pretrial hearing and, as such, should be prohibited from referencing the matter. In response, the State offered that it had no need to mention the abuse and neglect proceedings prior to petitioner's perjuring himself and requested to impeach petitioner using the order from the abuse and neglect proceedings, stating "I just want to be able to cross him according to the order and what his statements were in there." However, the circuit court noted that petitioner's exact statements were not contained in the order and no transcript was available. It concluded

> I will allow any proper cross-examine [sic] or proper rebuttal to what he says, if it's offered by the State. But for the purposes of this Order, I'm not going to let that be used as cross-examination impeachment material. I think it's too vague, for the record, and it opens up too many confusing doors to be used in this proceeding. I am just not going to do it. If there were a transcript, and he had particulars, that might be a different story, but we don't have that.

Petitioner resumed testifying at that point and the State continued with the following line of questions:

| [State:] | Just so we are clear, [petitioner], I had asked you – [your standby counsel] asked you did you sexually abuse the kids? |
|---|---|
| [Petitioner:] | Yes, he asked me that. |
| [State:] | And you answered, no? |
| [Petitioner:] | Yes, I did. |
| [State:] | And then I asked you if you had sexually abused each individual child, correct? |
| [Petitioner:] | Correct. |

3

| | |
|---|---|
| [State:] | But as of day [sic], your testimony to this jury is that you did not sexually abuse these kids? |
| [Petitioner:] | That's correct. |
| [State:] | [Petitioner], let me ask you this, have you ever previously admitted to the sexual abuse of these children? |
| [Petitioner:] | Not any specifics. |
| [State:] | That's not the question I asked. I said, have you ever previously admitted to sexual abuse of these children? |
| [Petitioner:] | I did, to get my children out of this. |

During re-direct examination, petitioner's standby counsel questioned petitioner on this point:

| | |
|---|---|
| [Standby counsel:] | [Petitioner], I think you need to explain that a little more. You were asked if you admitted to sexually abusing these children. What is it that you did? |
| [Petitioner:] | I loosely admitted to all the accusations to give up my parental rights to my daughters so that they were out of this whole mess. |
| | . . . . |
| [Petitioner:] | I remember saying I loosely admitted to the accusations. |
| [Standby counsel:] | And what did you mean when you said that? |
| [Petitioner:] | I honestly had no idea what I was meaning. That's just what I was told I had to do. |
| | . . . . |
| [Standby attorney:] | Did you believe that what you were saying was the truth when you said that? |
| [Petitioner:] | No. |

4

During re-cross examination, the State asked petitioner whether he was a party to the confidential case in which he admitted to the sexual abuse of the children at issue. At that point, the circuit court ordered counsel and petitioner to the bench and stated "I never opened – I don't want you getting into any confidential case. You asked him whether he admitted or didn't. He's answered that question." The circuit court told counsel for the State that he had gone "far enough."

At the close of the trial, the jury found petitioner guilty of all 143 counts. After his conviction, in May of 2017, petitioner filed post-trial motions requesting that he be granted a new trial based upon the State's inappropriate questioning into his abuse and neglect case. Petitioner also requested a judgment of acquittal based upon the sufficiency of the evidence. Petitioner asserted that the verdicts with regard to child D.A. were against the weight of the evidence since she had provided no actual testimony that she had been abused. Further, petitioner argued that none of the testimony presented set forth specific instances of misconduct that "matched the number of counts against him." He also stated that the jury deliberated for a limited amount of time and "simply rendered their verdicts based on the emotional and cumulative evidence that was heard" rather than attempting to match evidence and testimony on each count. The circuit court denied petitioner's post-trial motions and later sentenced him to an effective 230-735 year term of incarceration. It is from the August 4, 2017, sentencing order that petitioner appeals.

On appeal, petitioner first argues that he was denied effective assistance of counsel due to Mr. Shough's failure to subpoena witnesses and move the circuit court judge to recuse himself.[3] However, we have previously held that

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel . . . on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992). Moreover, we have explained that

> [t]he very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate

---

[3]As noted above, Mr. Shough was petitioner's counsel leading up to the trial and remained as standby counsel during the trial. Petitioner was briefly represented by different counsel who was relieved prior to Mr. Shough's appointment. However, petitioner raises no error with his first counsel's performance.

record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

*State v. Miller*, 194 W.Va. 3, 15, 459 S.E.2d 114, 126 (1995).

Accordingly, we decline to address an alleged ineffective assistance of counsel claim in this direct appeal because the record has not been developed on this issue. If petitioner desires to raise this issue, it must first be developed in a habeas corpus proceeding.

Petitioner next argues that the circuit court erred in permitting him to represent himself at trial. According to petitioner, he did not have "adequate time to appreciate or understand the gravity of the situation or the seriousness of his actions." In support, petitioner points out that the circuit court advised him that proceeding without counsel was against his best interest, yet nevertheless let him continue to trial immediately. As such, petitioner argues the circuit court should have allowed him more time to grasp the situation and further suggests that no harm would have been caused by a "slight delay" in the proceedings. We disagree.

We have long held that "[t]he right of self-representation is a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syl. Pt. 7, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983). Moreover, "[a] person accused of a crime may waive his constitutional right to assistance of counsel and his constitutional right to trial by jury, if such waivers are made intelligently and understandingly." Syl. Pt. 5, *State ex rel. Powers v. Boles*, 149 W.Va. 6, 138 S.E.2d 159 (1964). However, while an accused may exercise his right to self-representation, this right is subject to reasonable restrictions:

A defendant in a criminal proceeding who is mentally competent and sui juris, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

*Sheppard*, 172 W.Va. at 661, 310 S.E.2d at 178, Syl. Pt. 8. Further,

"[t]he determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se*." *State v. Sheppard*, [172] W.Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted).

Syl. Pt. 2, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985). This Court has noted that the preferred procedure in cases such as this is as follows:

> [w]hen an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary. In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation.

Syl. Pt. 7, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005). This Court has also found that "[a] judge's decision to allow an accused to exercise his right to self-representation is reviewed under an abuse of discretion standard." *Sandor*, 218 W.Va. at 471, 624 S.E.2d at 908, Syl. Pt. 1.

Having reviewed the record, we find that the circuit court did not abuse its discretion in allowing petitioner to proceed to trial without the assistance of counsel. Indeed, the record contains a detailed colloquy between the circuit court and petitioner concerning petitioner's right to counsel and dangers of proceeding pro se. The circuit court advised "you're charged with several serious crimes and quite honestly I think it's going to be contrary to your best interest to not continue to accept the services of your lawyer." The circuit court offered petitioner time to discuss his decision with his attorney more than once, yet petitioner declined and insisted on proceeding pro se. The circuit court also ensured that petitioner understood the charges against him, including the elements of each crime charged, as well as the consequences of conviction. Petitioner indicated that he understood that he would have to follow the rules of procedure and evidence, that he would not be given any special treatment simply because he was representing himself, and that he would not receive any extra time to prepare.

In sum, the record is clear that the petitioner understood his right to counsel, understood the dangers and pitfalls of self-representation, and nevertheless knowingly, voluntarily, and intelligently chose to proceed without the assistance of counsel. The circuit court followed the preferred procedure for warning an accused person, as set forth in *Sandor*, before allowing petitioner to represent himself. The circuit court made this decision after conducting a lengthy and thorough discussion with the petitioner about the rights and risks of waiving counsel and representing himself. Further, the circuit court appointed standby counsel to assist petitioner throughout the trial and petitioner conferred with him several times. Accordingly, we find no abuse of discretion in the circuit court's decision to permit petitioner to proceed without the assistance of counsel.

Petitioner next assigns as error the circuit court's denial of his motion for a new trial. According to petitioner, the State erred in referencing his involvement in a related, confidential abuse and neglect proceeding against the circuit court's instruction, amounting to prosecutorial misconduct. Petitioner avers that the State's mention of this related case unfairly prejudiced him and deprived him of his "due process right to having a jury not influenced by inadmissible

evidence." Petitioner insists this is especially true given the lower burden of proof in child abuse and neglect cases and the circuit court's failure to provide a limiting instruction to the jury. We find no merit in petitioner's argument.

We apply the following standard of review to a circuit court's denial of a motion for a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

*State v. Jenner*, 236 W.Va. 406, 413, 780 S.E.2d 762, 769 (2015). Regarding the allegedly improper statements made by the State, this Court has previously held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). *See also* Syl. Pt. 5, *State v. McCracken*, 218 W.Va. 190, 624 S.E.2d 537 (2005). Indeed, "[t]he test is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Sugg*, 193 W.Va. at 405, 456 S.E.2d at 486. The determination of whether improper prosecutorial argument "has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *Id.*, 193 W.Va. at 405, 456 S.E.2d at 486. As we held in Syllabus Point 6 of *Sugg*,

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

193 W.Va. at 393, 456 S.E.2d at 474. *See also* Syl. Pt. 8, *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 700 S.E.2d 489 (2010); *McCracken*, 218 W.Va. at 192, 624 S.E.2d at 539, Syl. Pt. 4. Here, the State requested to use the dispositional order from petitioner's related child abuse and neglect proceedings as impeachment material. However, the circuit court denied the request, stating "I will allow any proper cross-examine [sic] or proper rebuttal to what he says, if it's offered by the State. But for the purposes of this Order, I'm not going to let that be used as cross-examination impeachment material." Following the trial, the circuit court denied petitioner's motion for a new trial on the basis of prosecutorial misconduct, stating

> it's clear from [petitioner's] testimony that he was denying the acts of which he was alleged in this case, and certainly I think – when the State referenced impeachment, the [c]ourt certainly understood that question would have been also relevant in this matter in terms of whether or not there was any prior inconsistent

8

statements made by [petitioner] regarding what was alleged in this case. And also, which quite frankly is noted in the grounds by [petitioner], certainly there was no request for any limiting instruction made by [petitioner] in this case pursuant to that question, and while I would agree that it may very well have been a tactical decision by [petitioner] into an explanation regarding that question, that was a tactical decision that apparently in this matter did not sway the jury. However, while – so it's clear, the [c]ourt believes that it was appropriate for that question to be asked to demonstrate the inconsistency of the prior statement. I won't grant a new trial for that reason.

We find that the State was properly permitted to impeach petitioner and, under the circumstances of this case, find no reversible error in the State's reference to petitioner's abuse and neglect proceedings. The record establishes that the State's comments were isolated and there is no evidence that they were deliberately placed before the jury for the purpose of diverting attention to extraneous matters or misleading them. Further, as discussed more fully below, there was sufficient evidence, absent the State's remarks, to establish petitioner's guilt of the crimes charged. Here, the record demonstrates the circuit court intended to allow the State to question petitioner regarding his prior inconsistent statement, but prohibited using the related abuse and neglect dispositional order as impeachment material. Following the circuit court's instruction, the State questioned petitioner regarding his prior inconsistent statement and brought up the related case only after petitioner admitted to making a statement during that proceeding. Petitioner did not object but chose to offer an explanation regarding the case. Having reviewed the record, we find that the circuit court did not abuse its discretion in permitting the State to question petitioner regarding any prior inconsistent statements and further find that the prosecutor's reference to the related abuse and neglect case did not rise to the level of prejudicing petitioner such that a new trial was warranted.

To the extent that petitioner argues the circuit court should have given a limiting instruction to the jury, we note that petitioner did not request one and further note that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. Pt. 5, in part, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). Generally, "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. Pt. 2, in part, *State v. Adkins*, 209 W.Va. 212, 544 S.E.2d 914 (2001). Because petitioner failed to object or request a limiting instruction to the jury, we find that petitioner is entitled to no relief in this regard.

Lastly, petitioner argues that there was insufficient evidence to support his convictions. In support of this contention, petitioner argues that the State failed to produce evidence of specific acts as to the 143 counts contained in the indictment. According to petitioner, because the jury deliberated for a limited amount of time, it "simply rendered their verdicts based on the emotional and cumulative evidence that was heard" rather than attempting to match evidence and testimony on each count. Further, he states that "the relevant testimony from all five juvenile victims, as well as the testimony of the remaining witnesses produced at trial . . . as to the number of incidents or occurrences of criminal acts alleged simply cannot yield the number of

9

counts for which [p]etitioner was convicted. . . ." Specifically, petitioner asserts that the verdicts with regard to child D.A. were against the weight of the evidence since she had provided no actual testimony that she had been abused. Petitioner concludes that the circuit court's "failure to distinguish between counts for which evidence was presented at trial versus counts of the indictment for which there was no admissible evidence submitted constitutes an abuse of discretion and is clearly erroneous. . . ." We disagree.

In reviewing a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

We first note that petitioner only generally alleges that there was not enough evidence to support the number of counts upon which he was convicted and does not claim that any particular element of any of the crimes was unmet. This Court has cautioned that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.] Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). Nevertheless, we find that there was sufficient evidence from which the jury could find petitioner guilty of all the counts of first-degree sexual abuse, first-degree sexual assault, and sexual abuse by a parent, guardian, custodian, or person in a position of trust. The State presented the testimony of several witnesses, including the forensic interviewer, a pediatrician, and the children's therapist. Further, each of his victims testified before the jury regarding petitioner's abuse. With regard to D.A., although she stated that she did not understand why she was testifying, she was able to circle the vagina on a drawing of a female when asked where petitioner had touched her.

10

To the extent that petitioner argues that the testimony of the State's witnesses was hearsay, and therefore inadmissible, we note that petitioner fails to provide any specificity of his claim. But, in any event, petitioner fails to demonstrate that he objected to the witnesses' testimony, and thus waived the issue. We have stated that

> [t]he West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. . . . Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va.R.Evid. 103(a)(1).

*In re Tiffany Marie S.*, 196 W.Va. 223, 234, 470 S.E.2d 177, 188 (1996). Due to petitioner's failure to object, we find no error in the jury's consideration of any alleged hearsay evidence presented by the State.

Moreover, to the extent that petitioner argues that D.A.'s testimony was insufficient to support convictions with regard to the alleged crimes against her, we note that "we will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court." *Guthrie*, 194 W.Va. at 669, 461 S.E.2d at 176. Indeed, "[t]he jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Syl. Pt. 2, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967). Finally, "[w]hen in a criminal case the question of guilt depends upon the weight of evidence, or inferences and deductions from facts proved, the jury and not the court, is almost exclusively and uncontrollably the judge." *Id.* at 796, 115 S.E.2d at 851, Syl. Pt. 3.

Here, the pediatrician, the forensic interviewer, and the therapist all opined that the children made disclosures consistent with children who had been sexually abused. The jury heard the testimony of each of the five victims regarding the abuse perpetrated by petitioner, wherein they described that petitioner had touched their vaginas and breasts, among other acts, on multiple occasions. As such, the jury heard the allegedly insufficient evidence, and nonetheless returned guilty verdicts. Because weighing evidence and determining credibility are functions reserved to the jury and not this Court, petitioner's arguments regarding the sufficiency of the victims' testimony are without merit. Further, as petitioner failed to demonstrate which crimes were allegedly not supported by the evidence and only generally alleges insufficient evidence, we decline to find error in that regard.

For the foregoing reasons, the circuit court's August 4, 2017, sentencing is hereby affirmed.

Affirmed.

**ISSUED**: January 14, 2019

11

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison